## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

KENSHOO, INC.,

                Plaintiff,

- vs —

ARAGON ADVERTISING, LLC,

                Defendant.

Civil No. _____

**COMPLAINT**

Plaintiff Kenshoo, Inc., by and through its attorneys Hartmann Doherty Rosa Berman & Bulbulia, LLC, alleges as follows:

### THE PARTIES

1.      Plaintiff Kenshoo, Inc. ("Kenshoo") is a California corporation with a principal place of business at 22 4th Street, Floor 7, San Francisco, California 94103.

2.      Defendant Aragon Advertising, LLC ("Aragon") is a New York limited liability company with a principal place of business at 45 Main Street, Suite 816, Brooklyn, New York 11201.

### JURISDICTION AND VENUE

3.      This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because there is complete diversity of citizenship between the parties, and the amount in controversy is greater than $75,000, exclusive of interest and costs.

4.      Venue is proper under 28 U.S.C. § 1391(b)(1) and (c)(2) because Defendant Aragon resides in this District and is subject to the personal jurisdiction of this Court.  Furthermore, the parties agreed that any dispute arising under their agreement would be brought before the courts of, or located in, the State of New York, and that such courts would have exclusive jurisdiction.

## FACTS

5.    Kenshoo is a well-known digital marketing service provider that develops, owns, operates and licenses a web-marketing campaign-management tool and solutions for business (the "Kenshoo Platform").

6.    The Kenshoo Platform has been available worldwide since 2006, and it is used by a variety of businesses to manage their digital marketing activities.

7.    Kenshoo has invested and continues to invest substantial time, effort, and human and financial resources into the further development and expansion of the Kenshoo Platform, its brand and reputation.

8.    Defendant Aragon is a digital performance marketing agency which, *inter alia*, operates a website called themoneymanual.com ("The Money Manual").

9.    Upon information and belief, The Money Manual uses a third-party revenue tracking partner called Everflow.

10.    On or about May 24, 2019, Aragon and Kenshoo executed the Kenshoo Services Order Form, which was governed by the Kenshoo Services Agreement (together, the "Agreement").

11.    Under the Agreement, Kenshoo provided Aragon with access to the Kenshoo Platform to track and report on the results of Aragon's media expenditures relating to search engine optimization, social media and Pinterest (the "Kenshoo Package").

12.    The Agreement contained no representations as to the integration of Kenshoo's Platform with other third-party applications.

13.    Paragraph 10 of the Agreement provided that "KENSHOO PROVIDES THE SERVICES ON AN 'AS IS' BASIS, WITHOUT WARRANTIES OF ANY KIND .... KENSHOO

DOES NOT WARRANT THAT THE PLATFORM OR ANY SERVICES RELATED THERETO WILL BE DELIVERED OR PERFORMED ERROR-FREE OR WITHOUT INTERRUPTION."

14.    In consideration for access to the Kenshoo Platform, Aragon agreed, in relevant part, to make monthly payments of $14,350.

15.    The Agreement provided that such monthly payments were due "30 days from the end of the billed period," and that "[a]ny dispute over an invoice must be raised in a writing provided by [Aragon] to Kenshoo no later than 180 days from the date of the relevant invoice setting out the basis for the dispute."

16.    Kenshoo provided Aragon with monthly invoices setting forth the balance due.

17.    Paragraph 5 of the Agreement further provided that:

> Any payment not paid by [Aragon] to Kenshoo when due shall bear interest at the rate of .5% per month (but no more than the maximum rate allowed by applicable law), and shall constitute sufficient cause for Kenshoo to immediately suspend performance and terminate this Agreement. All costs incurred by Kenshoo for the collection of such payments, including reasonable attorney's fees, shall be borne in full by [Aragon].

18.    The parties agreed to an initial term of twelve months (the "Initial Term"), which was to extend automatically for additional one-year periods, "unless either party notifies the other party thirty (30) days prior to the expiration of the then-current term that it does not wish to renew this Agreement."

19.    Paragraph 13 of the Agreement provided that "either party may terminate this Agreement at any time by giving written notice to the other party if: (i) the other party breaches a material provision of this Agreement and fails to cure the breach within thirty (30) days after being given written notice thereof," and that, upon such termination, Aragon would "immediately cease use of the Kenshoo platform and return all Confidential Information to Kenshoo."

20.     Paragraph 18 of the Agreement provided: "This Agreement and any exhibits hereto, if any, constitutes the entire agreement between Kenshoo and [Aragon] and supersedes any previous agreements or representations, either oral or written, with respect to the subject matter of this Agreement.  All amendments may be made only in writing."

21.     In or around the end of May 2019, Kenshoo became aware that a complex server-to-server integration was needed to bring in The Money Manual's revenue data from Everflow, its third-party data tracking application.

22.     In or around early June 2019, The Money Manual onboarded to the Kenshoo Platform.

23.     The Agreement contained no provision for, or promises relating to, integration of the Kenshoo Platform with third-party applications.

24.     Nevertheless, Kenshoo representatives worked in good faith with Aragon, and devoted time and resources to ensuring the success of the parties' relationship, to troubleshoot the issues emanating from the third-party application over the next several months, although it was not required to do so.

25.     For reasons unrelated to the Kenshoo Platform, there were technical problems in doing so for Aragon.

26.     These technical problems, however, were not caused by the Kenshoo Platform.

27.     Solving the Everflow integration issues was not a condition precedent of the parties' Agreement or of Aragon's contractual obligation to pay for the Kenshoo Platform.

28.     Kenshoo at all times continued to provide to Aragon all contractually agreed-upon services and access to the Kenshoo Platform.

29.     Aragon continued to access the Kenshoo Platform and to use the services provided in the Kenshoo Package between June 2019 and January 2020.

30.     Kenshoo billed Aragon as provided under the parties' Agreement.

31.     Aragon failed to make any of the $14,350 monthly payments during the term of the Agreement, excepting a single payment to Kenshoo in the amount of $950.

32.     Aragon did not object in writing to any monthly invoice.

33.     Aragon did not terminate the Agreement in accordance with its terms.

34.     Aragon's failure and refusal to pay the agreed-upon fees constitute material breaches of the Agreement.

## COUNT ONE
### (Breach of Contract)

35.     Plaintiff repeats and realleges all the allegations set forth above.

36.     Kenshoo and Aragon entered into the Agreement, which is a valid and enforceable contract.

37.     Kenshoo performed all its obligations under the Agreement.

38.     Aragon breached the Agreement by failing to make the monthly payments required under the Agreement.

39.     As a direct and proximate result of Aragon's breach, Kenshoo has been damaged in the amount of at least $148,613, plus interest, costs and attorney's fees.

## COUNT TWO
### (Breach of the Implied Covenant of Good Faith and Fair Dealing)

40.     Plaintiff repeats and realleges all the allegations set forth above.

41.     The Agreement is governed by New York law.

42.     Under New York law, every contract contains an implied covenant of good faith and fair dealing.

43.     Kenshoo entered into the Agreement with the expectation that it would receive payment from Aragon in consideration for providing Aragon access to the Kenshoo Platform.

44.     Kenshoo performed all its obligations and provided all services in accordance with the Agreement.

45.     Kenshoo acted in good faith to attempt to accomplish the integration of Everflow with the Kenshoo platform even though it was not contractually obligated to do so.

46.     The Everflow integration was not a part of, or a condition precedent to, the Agreement, but it used the issues surrounding the integration in bad faith as a pretext for its refusal to make the payments to which it had agreed.

47.     In so doing, Aragon acted willfully and in bad faith, depriving Kenshoo of its rights under the Agreement.

48.     As a direct and proximate result of Aragon's breach of the implied covenant of good faith and fair dealing, Kenshoo has been damaged in the amount of at least $148,613, plus interest, costs and attorney's fees.

## COUNT THREE
### (Account Stated)

49.     Plaintiff repeats and realleges all the allegations set forth above.

50.     Kenshoo presented Aragon with an account of fees due under the Agreement.

51.     Aragon accepted each account without objection.

52.     Under the Agreement, Aragon promised to pay Kenshoo the amount stated in account.

53.     Aragon failed to pay the amount stated.

54.     As a direct and proximate result of Aragon's failure to pay the balances due and owing, Kenshoo has been damaged in the amount of $148,613, plus interest, costs and attorney's fees.

## COUNT FOUR
### (Unjust Enrichment)

55.     Plaintiff repeats and realleges all the allegations set forth above.

56.     Aragon was provided access to the Kenshoo Platform over a period of months but did not pay for it.

57.     Aragon used the Kenshoo Platform over a period of months but did not pay for it.

58.     As a result, Aragon was enriched at Plaintiff's expense.

59.     It is against equity and good conscience to permit Aragon to retain the benefit of having had access to the Kenshoo Platform without having paid for it.

60.     It is against equity and good conscience to permit Aragon to retain the benefit of having used the Kenshoo Platform without having paid for it.

61.     Accordingly, Plaintiff is entitled to an award of damages, plus interest, costs and attorney's fees.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff Kenshoo, Inc. demands judgment be entered in its favor and against Defendant Aragon Advertising, LLC, and awarding Kenshoo compensatory damages in

the amount of at least $148,613, plus interest, costs and attorney's fees; and granting such other

relief that the Court deems just and proper.

Respectfully submitted,

 /s/ Mark A. Berman
Mark A. Berman, Esq.
HARTMANN DOHERTY ROSA
BERMAN & BULBULIA, LLC
1270 Avenue of the Americas, 7th floor
New York, New York 10020
(212) 344-4619
mberman@hdrbb.com

*Attorneys for Plaintiff*
*Kenshoo, Inc.*

Dated: February 10, 2022